UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHRISTOPHER LISOWSKI,

          Plaintiff,

          -against-

REINAUER TRANSPORTATION CO., INC.,

          Defendant.
------------------------------------------------------------------x

**MEMORANDUM & ORDER**
03-CV-5396 (NGG) (MDG)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Christopher Lisowski seeks damages under the Jones Act, 46 U.S.C. § 30104, and the general maritime law of the United States for a back injury that he claims arose from two accidents that allegedly occurred aboard a vessel owned by Defendant Reinauer Transportation Co., Inc. due to Reinauer's negligence and the unseaworthiness of its vessel. (Seaman's Complaint for General Damages, Without Prepayment of Costs, Under 28 U.S.C. § 1916, on a Jones Act Claim, and a Claim under the General Maritime Law ("Complaint") (Docket Entry # 1) at 1-3.)

For the following reasons, Reinauer's motion for summary judgment is GRANTED.

**I. STANDARD OF REVIEW**

When deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court will not accept as fact allegations lacking evidentiary support, Fed. R. Civ. P. 56(e), or statements of fact without citations to the record, Local Civil Rule 56.1(e).

Summary judgment is appropriate when "there is no genuine issue as to any material fact

and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), *i.e.*, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). "A fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party has the burden of establishing the absence of a genuine issue of material fact. Liberty Lobby, 477 U.S. at 256. If the moving party meets its burden, the non-moving party must then "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## II. FACTUAL BACKGROUND

Viewed in the light most favorable to Lisowski, the non-moving party, the facts presented to the court in the parties' Rule 56.1 Statements are as follows:

On June 9, 2003, when Lisowski was working as a tankerman aboard Barge 145, a vessel owned and operated by Reinauer, he slipped on a loose grate. (Affidavit of Gino A. Zonghetti ("Zongh. Aff.") (Docket Entry # 52), Exh. C ("Lisowski Dep.") at 133-34, 167.) The grate was loose because the bolts securing the grate had been removed in order to perform maintenance, but had not been replaced. (Zongh. Aff., Exh. D ("Holzman Dep.") at 13.)

Lisowski was "pretty shaken up" by the incident and reported it immediately to his supervisor, Chief Mate Mark Holzman. (Lisowski Dep. at 167.) Holzman observed that Lisowski was scared and "white as [a] piece of paper." (Holzman Dep. at 12-13.) Although Lisowski showed Holzman that his back had been scratched, (Lisowski Dep. at 175), he did not

tell Holzman that his back was injured, (Holzman Dep. at 46). Instead, he told Holzman that he was "okay." (Lisowski Dep. at 175.) Lisowski did not seek or feel that he required medical attention, (id. at 176-77), and he continued to work for the remainder of his tour of duty. (Holzman Dep. at 46.) In fact, it was not until after Lisowski's second accident, on July 3, 2003, that he "actually realized that [he] had initially hurt" himself on June 9, 2003. (Lisowski Dep. at 137.) Lisowski never told his physician, Dr. Alan Gillick, about his June 9, 2003 slip. (Zongh. Aff., Exh. H ("Gillick 1st Dep.") at 71.) The first time that Dr. Gillick, also Lisowski's expert witness, learned about Lisowski's June 9, 2003 accident was when Lisowski's counsel wrote him a letter about it. (Id. at 22-23.)

Early on the morning of July 3, 2003, between 1 A.M. and 2 A.M., Lisowski was again working aboard Barge 145 when he slipped on the vessel's deck near the number 4 pump and "wrenched" his back. (Lisowski Dep. at 239.) The deck was slippery because the number 4 pump had been leaking oil. (Holzman Dep. at 21-22.) Holzman worked with Lisowski on Barge 145 from 1 A.M. to about 4:30 A.M. (Id. at 51, 55.) Although Lisowski reported to Holzman that the deck near the number 4 pump was slippery, Lisowski did not, while Holzman was on the barge, tell Holzman that he had wrenched his back or otherwise been injured. (Id. at 54-55.)

Later on the morning of July 3, 2003, Lisowski reported to Holzman that his back hurt. (Lisowski Dep. at 193-94.) He told Holzman that he did not know how he had hurt his back, but that it could have been caused by slipping on the deck, sleeping on it wrong, or twisting a valve. (Id. at 194.) Lisowski later told Timothy Bishop, the captain of Barge 145 and its tugboat, that he had hurt his back either sleeping on it wrong or twisting a valve. (Id. at 198.) The personal injury report filled out by Bishop on July 7, 2003, which Lisowski did not sign, states that

Lisowski had "trouble getting out of bed — don't know what he did to back — maybe turning valves prior watch or small slip on deck — no recollection of incident causing injury." (Zongh. Aff., Exh. F.) Lisowski did not tell Holzman about his July 3, 2003 slip until several days or even weeks later, when Holzman was discussing with him what might have caused his back pain. (Holzman Dep. at 36, 50.)

Dr. Gillick first saw Lisowski on August 15, 2003. (Gillick 1st Dep. at 5.) Lisowski then told Dr. Gillick that he injured his back on July 3, 2003, sustaining "twisting injury to his back on a wet deck on the ship." (Id. at 69.) At his deposition, Dr. Gillick stated that Lisowski's two incidents aboard Barge 145 "could" have exacerbated a condition already present in Lisowski's back known as spondylolisthesis, thereby causing him pain and necessitating surgery to relieve that pain. (Id. at 24-26.)[1] Dr. Gillick also stated that either of Lisowski's accidents could on its

---

[1] Lisowski has submitted an unsworn letter from Dr. Gillick, in which Dr. Gillick states that he believes that:

> [T]he two injuries that [Lisowski] sustained aboard ship in June and July of 2003 did aggravate this underlying condition and subsequently led to the requirement of surgical correction. To state it in a different way, I do feel within a reasonable degree of medical certainty that the injuries sustained to Chris, to his lumbar spine, aboard ship, are directly responsible for the symptomatology that ultimately required surgical repair via spinal decompression and fusion." (Declaration of Paul Edelman in Support of Plaintiff's Opposition to Summary Judgment (Docket Entry # 56), Exh. A.)

This letter, if admissible, would be very helpful to Lisowski in opposing Reinauer's motion for summary judgment. See infra text at 6-10. However, "unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment." Capobianco v. City of New York, 422 F.3d 47, 55 (2d Cir. 2005). Lisowski implies that Dr. Gillick's letter is admissible because it is "attached to [Dr. Gillick's] deposition testimony." (Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Docket Entry # 55) at 6.) The court is unaware of any exception to the hearsay rule for documents that are "attached" to deposition testimony. Dr. Gillick's letter is therefore inadmissible.

own have aggravated Lisowski's spondylolisthesis. (Zongh. Aff., Exh. I ("Gillick 2nd Dep.") at 22-23.) According to Dr. Gillick, twisting a valve could have aggravated Lisowski's spondylolisthesis, depending on the size of the valve. However, it was unlikely that sleeping the wrong way could cause persistent disabling symptoms of the kind reported by Lisowski. (Id.) Determining whether twisting the valve or slipping caused the aggravation of Lisowski's symptoms would depend on "the circumstances of what [Lisowski] was going through from a pain standpoint specifically related to [these] incidents." Dr. Gillick stated that he did not know these circumstances sufficiently to be able to say what caused Lisowski's symptoms. (Id. at 28.) Finally, Dr. Gillick testified that a previous episode in 1999, when Lisowski had to take three months off from work because of back pain, demonstrated that Lisowski's spondylolisthesis was symptomatic before his accidents on Barge 145, although Dr. Gillick noted that it was common for patients to have episodes which would resolve on their own, allowing them to return to work. (Id. at 49.)

Dr. Daveed Frazer, an orthopedic spine surgeon retained by Reinauer to evaluate Lisowski's back injury, found that there was no objective radiographic evidence of an injury to Lisowski's spine. He concluded (1) that there is "no objective evidence in terms of radiographic studies, neurophysiologic testing, or physical examination that there is any substantial change in Lisowski's condition" and (2) "[t]he radiographic changes seen between 1999 and 2003 cannot

---

The inadmissibility of this letter is certainly reasonable in light of Dr. Gillick's apparent unwillingness to subject himself to cross-examination as to the conclusions he made in his unsworn letter regarding the cause of Lisowski's symptoms. These conclusions were significantly stronger than the statements Dr. Gillick made at his deposition, where he restricted himself to stating that Lisowski's accidents "could" have caused his symptoms.

be attributed to the accident but are consistent with the natural history of progression of the underlying disease." (Zongh. Aff., Exh. J.)

### III. CLAIMS

Lisowski has sued Reinauer under the Jones Act, 46 U.S.C. § 30104, and the general maritime law of the United States for back injuries allegedly caused by Reinauer's negligence and the unseaworthiness of Barge 145. Specifically, Lisowski claims that Reinauer should have (1) replaced the bolts on the grate upon which Lisowski slipped; (2) repaired the leaky pumps which made Barge 145's deck slippery; and (3) applied non-skid paint to Barge 145's deck to prevent slips. (Complaint ¶ 8.)

### IV. DISCUSSION

#### A. Jones Act

The Jones Act places a duty on the owner of a vessel to provide a reasonably safe workplace. Oxley v. City of New York, 923 F.2d 22, 25 (2d Cir. 1991). A "plaintiff is entitled to go to the jury if the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury . . . for which damages are sought.' " Id. (emphasis in original). In Jones Act cases, "the right of the jury to pass upon the question of fault and causation must be most liberally viewed." Id.

Reinauer argues that Lisowski cannot establish a *prima facie* case for negligence under the Jones Act or unseaworthiness under the general maritime law of the United States because he is unable to establish that any action or inaction by Reinauer exacerbated his spondylolisthesis. Specifically, Reinauer argues that expert medical testimony is required to establish a causal relationship between the accidents allegedly suffered by Lisowski on Barge 145 and the

aggravation of his spondylolisthesis. It claims that Dr. Gillick's testimony, which it characterizes as "speculative," is insufficient to prove this causal relationship. Reinauer argues that because Lisowski has not presented any other admissible evidence of causation, his Jones Act claim must be dismissed. (Motion of Defendant Reinauer Transportation Companies, LLC for an Order Barring Inadmissible Speculative Testimony of Allan Gillick, D.O. at Trial and for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (Docket Entry # 51) at 15-17.)

Where "the nexus between the injury and the alleged cause would not be obvious to the lay juror," expert medical testimony is required to demonstrate causation. Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (requiring medical testimony to establish causation in a Jones Act case). The parties here dispute whether Lisowski's symptoms are the result of the natural progression of his pre-existing condition or are a product of the accidents Lisowski allegedly suffered as a result of Reinauer's negligence. See supra text at 4-6. These are complex medical matters which would not be obvious to a lay juror. Lisowski must therefore present expert testimony on the issue of causation. As a corollary, since the cause of the aggravation of Lisowski's spondylolisthesis is a medical matter beyond Lisowski's knowledge, he may not testify as to causation himself. See Henry v. A/S Ocean, 512 F.2d 401, 408 (2d Cir. 1975) ("Judge Carter excluded testimony by Braye concerning the cause of his conditions, and this was proper since lay testimony to the medical fact beyond the witness's knowledge would be entitled to no weight.").

Lisowski has presented expert medical evidence, in the form of Dr. Gillick's deposition. Reinauer claims that Dr. Gillick's testimony at his deposition was merely "speculative" and therefore insufficient to meet Lisowski's burden to demonstrate causation. Therefore, this court

must decide whether Dr. Gillick's statement that Lisowski's alleged accidents "could" have caused the aggravation of his spondylolisthesis is sufficient to meet Lisowski's burden as to causation under the Jones Act.

In <u>Sentilles v. Inter-Carribean Shipping Corp.</u>, 361 U.S. 107 (1959), cited by Lisowski, the plaintiff Sentilles claimed that as a result of an accident at sea his previously-latent tuberculosis was aggravated. Three specialists testified at trial about the cause of the aggravation of Sentilles's tuberculosis. One stated that the accident "might" have caused the aggravation. Another stated that the accident and Sentilles's diabetes were the most likely causes of the aggravation, but was unable to state which was more likely. Another stated that the accident "probably aggravated" Sentilles's condition, but he could not state so with complete confidence: "We don't ever select one item and say that is the cause of any particular aggravation." <u>Id.</u> at 109. The Supreme Court stated that it didn't matter that these physicians were unable to testify that the accident was "in fact the cause" of the aggravation of the Sentilles's tuberculosis:

> The jury's power to draw the inference that the aggravation of petitioner's tubercular condition, evident so shortly after the accident, was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause. Neither can it be impaired by the lack of medical unanimity as to the respective likelihood of the potential causes of the aggravation, or by the fact that other potential causes of the aggravation existed and were not conclusively negated by the proofs. The matter does not turn on the use of a particular form of words by the physicians in giving their testimony. <u>Id.</u>

Lisowski, focusing on the testimony of Sentilles's first specialist that Sentilles's accident "might" have aggravated his tuberculosis, claims that under <u>Sentilles</u> "[m]edical testimony in a Jones Act case need only be reasonably causally related. It need not even be probable." (Plaintiff's Opposition to Defendants Motion for Summary Judgment (Docket Entry # 55) at 9.) This

argument, however, misreads Sentilles, for it ignores the testimony of Sentilles's other two specialists, who provided significantly stronger testimony as to causation than the first. Sentilles means exactly what it says. First, the plaintiff need not introduce medical testimony that defendant's negligence was definitely the cause of plaintiff's injury. Second, medical testimony as to causation need not be unanimous. See Sentilles, 361 U.S. at 109. Sentilles does not, however, say that medical testimony need not demonstrate any level of probability. In fact, the Second Circuit, citing Sentilles, has required that the plaintiff in a Jones Act case provide "reasonably persuasive proof that the negligence was the probable cause of the injury." See Fitzgerald v. A. L. Burbank & Co., 451 F.2d 670, 681 (2d Cir. 1971) ("But, of course, the jury is not permitted to speculate on proximate cause in the absence of reasonably persuasive proof that the negligence was the probable cause of the injury, see Sentilles").

Lisowski has not presented "reasonably persuasive proof" that his alleged accidents on Barge 145, allegedly caused by Reinauer's negligence, were the probable cause of the aggravation of his spondylolisthesis. Dr. Gillick's statement at his deposition that the accidents "could" have aggravated Lisowski's spondylolisthesis is merely a statement of possibility, insufficient to demonstrate any level of probability. Reinauer is therefore GRANTED summary judmgent on Lisowski's Jones Act claim.

### B. General Maritime Law

To prevail on a claim of unseaworthiness under the general maritime law, a plaintiff must prove that a vessel was defectively or insufficiently equipped and that his injuries resulted from the unseaworthy condition of the vessel. Oxley, 923 F.2d at 26 (internal citations omitted). Courts in this circuit are divided as to what level of causation must be demonstrated in an

unseaworthiness claim. In Milos v. Sea-Land Serv., Inc., 478 F. Supp. 1019, 1023 (1979) one judge in the Southern District of New York ruled that the causation requirement was the same standard that applies in a Jones Act case. In Saleh v. United States, 849 F. Supp. 886, 895 (1994), another judge in the same district required the plaintiff to demonstrate that "the unseaworthiness played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness," and described Milos as "out of step with other statements of law on this subject." Saleh, 849 F. Supp. at 895 n.8; see also Brown v. OMI Corp., 863 F. Supp. 169, 170 (S.D.N.Y. 1994) (following Saleh); Nasser v. CSX Lines, LLC, 191 F. Supp. 2d 307, 315 (E.D.N.Y. 2002) (same).

As Lisowski cannot satisfy even the weak causation requirement under the Jones Act, let alone the more stringent substantial factor test set forth in Saleh, it is unnecessary for the court to determine the causation requirement in a claim for unseaworthiness. Reinauer is GRANTED summary judgment on Lisowski's unseaworthiness claim.

## V. CONCLUSION

For the reasons stated above, Reinauer's motion for summary judgment is GRANTED.

SO ORDERED.

Dated: March 24, 2008             s/ Nicholas G. Garaufis
       Brooklyn, N.Y.              NICHOLAS G. GARAUFIS
                                      United States District Judge