UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

CHRISTOPHER LISOWSKI,

**MEMORANDUM & ORDER**

**03-CV-5396 (NGG)**

Plaintiff,

-against-

REINAUER TRANSPORTATION CO.,
INC.,

Defendant.

----------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Christopher Lisowski ("Plaintiff" or "Lisowski") seeks damages under the Jones

Act, 46 U.S.C. § 30104, and the general maritime law of the United States, alleging that his pre-

existing back condition was aggravated by two accidents aboard a vessel owned by Defendant

Reinauer Transportation Co., Inc. ("Defendant" or "Reinauer") that were allegedly caused by

Defendant's negligence and the unseaworthiness of its vessel. (Seaman's Complaint for General

Damages, Without Prepayment of Costs, Under 28 U.S.C. § 1916, on a Jones Act Claim, and a

Claim under the General Maritime Law ("Complaint") 1-3 (Docket Entry #1).) By

Memorandum & Order dated March 24, 2008, this court granted Defendant's Motion for

Summary Judgment. Lisowski v. Reinauer Transp. Co., Inc. ("Lisowski I"), slip op., No. 03-

CV-5396 (NGG) (MDG), 2008 WL 794948 (E.D.N.Y. Mar. 24, 2008) (Docket Entry #60). The

Clerk of the Court entered a judgment against Plaintiff on March 27, 2008. (Docket Entry #61.)

On April 8, 2008, Plaintiff filed a Motion for Reconsideration and Request to Submit Proposed

1

Affidavit by Dr. Alan Gillick.[1]  (Docket Entry #62.)  For the reasons below, Plaintiff's Motion is GRANTED to the extent that it seeks reconsideration, but the request to submit the proposed declaration is DENIED.  On reconsideration, Defendant's Motion for Summary Judgment GRANTED IN PART and DENIED IN PART, for the reasons discussed below.  Accordingly, the judgment dated March 27, 2008 is rescinded.

## I.      MOTION FOR RECONSIDERATION

### A.      Standard of Review

While Plaintiff filed his Motion for Reconsideration pursuant to Rule 60(b) and Local Civil Rule 6.3, the court should treat it as a motion to alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure if filed within ten days of the entry of judgment and as a Rule 60(b) motion if filed thereafter.  See, e.g., Cioce v. County of Westchester, No. 03-CV-6795 (CLB), 2006 WL 692022, at *1 (S.D.N.Y. Mar. 14, 2006) (citing United States v. Clark, 984 F.2d 31, 32 (2d Cir. 1993)).  To be timely under Rule 59(e), "a motion must be filed within 10 days after entry of the judgment, computed in accordance with Fed. R. Civ. P. 6(a), with intermediate Saturdays, Sundays, and legal holidays excluded."  Lichtenberg v. Besicorp Group Inc., 204 F.3d 397, 401 (2d Cir. 2000).  Here, the Clerk of the Court entered a final judgment against Plaintiff on March 27, 2008, and Plaintiff filed his Motion for Reconsideration on April 8, 2008.  Excluding weekends, Plaintiff's Motion was filed within the ten-day window, so the court will construe it as a Rule 59(e) motion rather than a motion under Rule 60(b).  See United States v. City of New York, 248 F.3d 48, 52 (2d Cir. 2001).

The decision to grant or deny a motion under Rule 59(e) or Local Rule 6.3 is within the sound discretion of the district court.  See Patterson v. United States, No. 04-CV-3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006) (citing McCarthy v. Manson, 714 F.2d 234,

---

[1] The "Proposed Affidavit" Plaintiff seeks to admit is a declaration, not an affidavit.

2

237 (2d Cir. 1983)); see also Am. ORT, Inc. v. ORT Israel, No. 07-CV-2332 (RJS), 2009 WL 233950, at *3 (S.D.N.Y. Jan. 22, 2009) (noting that a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and a motion for reconsideration under Local Rule 6.3 are assessed under the same standard). Granting the motion is appropriate where "the moving party can point to controlling decisions or data the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." In re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted). A motion for reconsideration may also be granted to "correct a clear error or prevent manifest injustice." Coleman v. brokersXpress, LLC, No. 08-CV-5085 (SAS), 2009 WL 539862, at *1 (S.D.N.Y. Mar. 4, 2009) (citation omitted). Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Id. (citations omitted); see also Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995) (noting that a motion for reconsideration should be denied when the movant "seeks solely to relitigate an issue already decided.").

### B.    Discussion

The court presumes familiarity with Lisowski I. Lisowski I granted summary judgment to Defendant on Plaintiff's Jones Act claim on the basis that Plaintiff did not provide "reasonably persuasive proof" that the two accidents in June and July of 2003, allegedly caused by Defendant's negligence, were the probable cause of the aggravation of his spondylolisthesis, a pre-existing back condition. Lisowksi I, 2008 WL 794948, at *5. Specifically, the court found that the deposition testimony of Plaintiff's physician and expert witness, Dr. Alan Gillick, that the accidents "could" have aggravated Plaintiff's spondylolisthesis was "merely a statement of possibility, insufficient to demonstrate any level of probability." Id. Having granted summary

3

judgment on the Jones Act claim, the court did not reach Plaintiff's claim under the general maritime law. Id.

Lisowksi I relied in part on the inadmissibility of an unsworn letter from Dr. Gillick to Plaintiff's counsel, which states in pertinent part that:

> The two injuries that [Lisowksi] sustained aboard ship in June and July of 2003 did aggravate this underlying condition and subsequently led to the requirement of surgical correction. To state it a different way, I do feel within a reasonable degree of medical certainty that the injuries sustained to [Lisowski], to his lumbar spine, aboard ship, are directly responsible for the symptomology that ultimately required surgical repair . . . .

Lisowksi I, 2008 WL 794948, at *2 n.1 (quoting Declaration of Paul Edelman Ex. A (Docket Entry #56)). Plaintiff submitted that letter in opposition to Defendant's Motion for Summary Judgment, asserting in his memorandum of law that it was "attached to [Dr. Gillick's] deposition testimony." (Pl. Opp. Summ. J. 6 (Docket Entry #55).) Defendant's reply memorandum contends that the letter is inadmissible hearsay because it "was not referred to by the doctor nor relied upon by him at his deposition . . . ." (Def. Reply Mem. Supp. Summ. J. ("Def. Reply") 3 & n.3 (Docket Entry #59).) In Lisowksi I, the court found that "the letter, if admissible, would be very helpful to Lisowski" in opposing summary judgment, but the letter was inadmissible hearsay, given that it was merely attached to the deposition testimony. Lisowksi I, 2008 WL 794948, at *2 n.1.

In his Motion for Reconsideration, Plaintiff cites portions of Dr. Gillick's first deposition – which Plaintiff did not cite anywhere in his response to Defendant's 56.1 Statement, Statement of Additional Material Facts Pursuant to Rule 56.1, or memorandum of law – in which Dr. Gillick provided stronger testimony regarding causation than the excerpts Plaintiff previously

cited from Dr. Gillick's second deposition.[2] Specifically, when asked whether he could state with "a reasonable medical certainty" and "in his medical expertise as a surgeon" whether "either or both of the incidents cause[d] the injuries of which [Plaintiff] complained of when he came and seeked [sic] your assistance," Dr. Gillick testified, over Defense counsel's objection, that "I do believe that the injury that he described to me did in fact cause the symptoms that required treatment by myself," referring to the July 2003 incident. (Pl. Mem. Supp. Mot. Reconsideration ("Pl. Mem.") 3 (citing First Deposition of Dr. Alan Gillick ("Gillick 1st Dep.") 36-37, Affidavit of Gino A. Zonghetti ("Zonghetti Aff.") Ex. H (Docket Entry #52)).) Plaintiff also points to additional, previously uncited deposition testimony in which Dr. Gillick stated that the second incident was sufficient to cause the aggravation of Plaintiff's injury. (Id. (citing Gillick 1st Dep. 91 ("[T]he second event is certainly perfectly adequate to explain his injury"); id. at 90 ("What I'm saying is the description of the second injury is sufficient to have caused the injury.").)

In addition, Plaintiff argues in his Motion for Reconsideration that Dr. Gillick's letter is admissible evidence because it was "adopted" by Dr. Gillick at the deposition, citing to previously uncited portions of the deposition concerning the letter. (Pl. Mem. 1, 4.) Finally, Plaintiff seeks to admit a proposed declaration dated April 2, 2008 from Dr. Gillick, which Plaintiff contends "formally presents the contents of the letter as sworn medical testimony." (Id. at 5 & Ex. A.)

In response, Defendant asserts that because Plaintiff never cited those specific portions of Dr. Gillick's deposition in opposing summary judgment, Plaintiff cannot prevail on his argument that the court failed to consider evidence that Plaintiff did not cite. (Def. Opp. Pl. Mot. for

---

[2] The court notes that Defendant submitted the first and second depositions of Dr. Gillick in their entirety as exhibits in support of its Motion for Summary Judgment, but neither party cited the specific testimony on which Plaintiff now relies. In opposing Defendant's Motion, Plaintiff cited to portions of Dr. Gillick's second deposition in his response to Defendant's 56.1 Statement, Statement of Additional Material Facts Pursuant to Rule 56.1, and memorandum of law, but made no reference to the first deposition.

Reconsideration ("Def. Opp.") 6 (Docket Entry #67).) Defendant notes that the Second Circuit has held that Rule 56 of the Federal Rules of Civil Procedure "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute" in ruling on a motion for summary judgment. Amnesty Am. v. Town of West Hartford, 288 F.3d 467, 470-71 (2d Cir. 2002); see also Revlon Consumer Prod. Corp. v. Estee Lauder Cos., Inc., No. 00-CV-5960 (RMB) (AJP), 2003 WL 21751833, at *42 n.55 (S.D.N.Y. July 30, 2003) (granting the defendant's motion for summary judgment and noting that the plaintiff cannot "expect the Court to comb the record to find evidence not highlighted in [Plaintiff's] motion papers – summary judgment is not a game of hide and seek."). In addition, Defendant contends that even if the previously uncited testimony is considered, it should not change the result of Lisowski I. (Def. Opp. 8.) Finally, Defendant argues that the proposed declaration should not be admitted, as it was submitted after the court granted summary judgment and, it argues, contradicts Dr. Gillick's sworn deposition testimony. (Id. at 4.)

The court has reviewed the additional portions of Dr. Gillick's deposition cited in Plaintiff's Motion for Reconsideration as well as the proposed declaration. As set forth below, the court grants the Motion for Reconsideration to the extent that it will consider, to prevent manifest injustice, previously uncited portions of Dr. Gillick's deposition testimony. The court will not consider Dr. Gillick's 2004 unsworn letter or his proposed declaration.

### 1.    Previously Uncited Deposition Testimony

The court has made no error in failing to consider evidence in the record that was not cited by the parties in their motion papers. As Defendant correctly notes, Rule 56 of the Federal Rules of Civil Procedure "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." Amnesty Am., 288 F.3d at

470-71; see also Revlon, 2003 WL 21751833, at *42 n.55 (noting that Plaintiff cannot "expect the Court to comb the record to find evidence not highlighted in [Plaintiff's] motion papers – summary judgment is not a game of hide and seek."). Plaintiff's counsel has offered no excuse for failing to present the strongest evidence in opposing summary judgment. While he asserts that "Plaintiff should not suffer the ultimate penalty of dismissal because his attorney reasonably believed that sufficient evidence was before the Court," there is no explanation for why counsel did not cite those portions of Dr. Gillick's deposition testimony. (Pl. Mem. 5.) Nonetheless, now that the court is aware of testimony that would change the outcome of the previous Memorandum & Order, as discussed below, the court concludes that it is in the interest of justice to consider the previously uncited deposition excerpts.

### 2.    Dr. Gillick's Letter

Defendant's assertion that Dr. Gillick's letter was "not referred to by the doctor nor relied upon by him at his deposition" – while perhaps technically correct in that the doctor did not affirmatively rely on the letter as the basis for his opinion – does not accurately represent the record. At the deposition, Defendant's counsel explicitly asked Dr. Gillick whether he wrote the letter and then proceeded to cross-examine him about the contents of the letter, reading aloud portions of the letter and eliciting testimony that differed somewhat from the letter's contents. (See Gillick 1st Dep. 78, 89-91.) Although the parties did not cite the portions of the deposition concerning the letter, it is clear that the letter was not merely "attached" to the deposition, as the parties initially asserted in their memoranda of law. Plaintiff now contends that "counsel for the defendant had Dr. Gillick explain and adapt [sic] the opinions on causation" and argues that the letter is admissible. (Pl. Mem. 4.) The court considers the admissibility of the letter below and concludes that Dr. Gillick did not adopt the letter, so the letter is inadmissible hearsay.

7

As set forth in Rule 801(c) of the Federal Rules of Evidence, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Under Rule 801(d), a prior statement by a declarant is not hearsay when:

> [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

Fed. R. Evid. 801(d).[3] Here, it is undisputed that the letter was unsworn; in addition, there is no contention that the letter was offered to rebut a charge of fabrication or improper influence or motive.

The letter would nonetheless be admissible, however, if it were "adopted" by Dr. Gillick during his deposition. The Advisory Committee's Note to Rule 801(d) state that "[c]onsiderable controversy has attended the question whether a prior out-of-court statement by a person now available for cross-examination concerning it, under oath and in the presence of the trier of fact, should be classed as hearsay." Fed. R. Evid. 801, Advisory Committee's Note to Subdivision (d), 1972 Proposed Rules. In particular, the Committee noted that "[i]f the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem." Id. It noted that "[t]he hearsay problem arises when the witness on the stand denies having made the statement or admits having made it but denies its truth." Id.

In BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil, 184 F.R.D. 3 (D.D.C. 1999), on which Plaintiff relies, the D.C. Circuit considered "whether, and to what extent, a

---

[3] Where prior inconsistent statements are introduced, they are "generally admissible for impeachment purposes only, see Fed. R. Evid. 613, and are inadmissible hearsay for substantive purposes unless they were made at 'a trial, hearing, or other proceeding, or in a deposition.'" Santos v. Murdock, 243 F.3d 681, 684 (2d Cir. 2001) (citing Fed. R. Evid. 801(d)(1)(A)).

witness during testimony can adopt or incorporate a prior statement such that the prior statement becomes one 'made by the declarant while testifying.'" Id. at 6. In that case, the declarant was unavailable for trial, and so the admissibility of his prior statements was at issue. The court cited the Advisory Committee's Note for the proposition that when the witness admits that he made the statement and it was true, the statement was adopted, but noted that the standard for "the standard used to measure when a witness has effectively incorporated prior statements into present testimony" is "less clear."[4] Id. It noted that "where a witness cannot recall making a prior statement, has no present recollection of its contents and is not even sure the events referred to in the prior statement occurred, the witness has not incorporated the prior statement into present testimony." Id. (citing cases). The court also noted that "[o]n the other hand, a witness's reference to the prior statement need not be so specific as to require each and every question of a prior deposition or every sentence of a prior statement to be reiterated by the witness during testimony." Id. The "gray country" between the two scenarios is "where the witness has only a general recollection of a prior statement and avers to its truth or where the witness recalls some but not all the events detailed in a prior statement and can only say that the prior statement "sounds right." Id. The court held that "in these middle-ground cases it must be established that the prior statement is about as reliable as present testimony for incorporation of a prior statement to be effective." Id. at *7. It further concluded that Rule 602's requirement that a witness must have personal knowledge of a matter on which he or she testifies "applies to incorporated prior statements just as it applies to other parts of live testimony." Id.

Here, Dr. Gillick's letter was introduced by Defendant's counsel on cross-examination to demonstrate that the opinion expressed therein was inconsistent with Dr. Gillick's deposition

---

[4] The court in BCCI Holdings used the word "incorporate" rather than "adopt," finding the former "a more precise term." BCCI Holdings, 184 F.R.D. at 6 n.2.

testimony. Defendant's counsel elicited that Dr. Gillick wrote the letter and cross-examined Dr. Gillick about his opinion and the cause of Plaintiff's injuries. (See Gillick 1st Dep. 78-92.) Dr. Gillick testified that "[t]he only [causal] connection that I have made and continue to make is . . . the injury that I'm aware of, and that was the injury on the deck in July. And it's on that that I based my causal connection." (Id. at 87-88 (emphasis added).) Subsequently, the following exchange occurred:

> Q. What you're saying is that you believe that the second of these alleged injuries was the cause of whatever treatment . . . you rendered. Is that it?
> A. What I'm saying is the description of the second injury is sufficient to have caused the injury.
> Q. Okay. You ever express an opinion that both of them caused the injury?
> A. I did not, to my knowledge.
> Q. Okay. . . . you say in your letter back to [Plaintiff's counsel] . . .of July 26, 2004 that 'Based on these facts and the history provided by yourself, as well as Chris, I do believe that the two injuries that he sustained aboard ship in June and July of 2003 did aggravate this underlying condition and subsequently led to the requirement for surgical correction.'
> So your opinion in July of 2004 was based on the two accidents and the cumulative effect of the two alleged injuries in June and July of 2003. Isn't that right?
> A. I don't recall saying anything about cumulative effect.
> Q. It doesn't appear there, but if you're relying on both you must be relying on the cumulative impact of these two alleged events. Isn't that right?
> A. Maybe in your practice you do that. But no, I was not in any way relying on cumulative effect. I was taking facts that I assumed to be true, and I it [sic] was at that time I was informed on the first incident and I had no reason to doubt it.
> And based on those two incidents, I did formulate that opinion. However, as I explained about ten times so far, the second event is certainly perfectly adequate to explain his injury.

Gillick 1st Dep. 89-91.

The court concludes that Dr. Gillick's testimony is insufficient to constitute "adoption" or "incorporation" of the letter. The letter is thus inadmissible hearsay. Dr. Gillick's deposition

testimony concerning the letter is admissible, however, and the court will consider it on reconsideration.

### 3. Proposed Declaration of Dr. Gillick

Plaintiff contends that the proposed declaration "clarifies what was already in the record before the Court and Dr. Gillick formally presents the contents of the letter as sworn medical testimony." (Pl. Mem. 5.) In the proposed declaration, Dr. Gillick swears to the contents of the letter, states that it reflects his medical opinion, and that, if called as a witness, he would "testify to [its] contents." (Id. at Ex. A.) In addition, Dr. Gillick declares that "[i]n responding with the word 'could' [at deposition], I meant to convey my opinion, to a reasonable degree of medical certainty, that the reported incidents caused the injuries to Christopher Lisowski." (Id. ¶ 4.) A motion for reconsideration is not the appropriate forum for evidence Plaintiff could have brought previously.[5] See, e.g., In re Salomon Analyst Winstar Litig., No. 02-CV-6171 (GEL), 2006 WL 510526, at *1 (S.D.N.Y. Feb. 28, 2006) (noting that a motion for reconsideration should not be used "to present evidence that could have been raised prior to the entry of judgment.") (citation and internal quotation marks omitted); Ortho Diagnostic Sys., Inc. v. Abbott Labs., Inc., 926 F. Supp. 371, 372 (S.D.N.Y. 1996) ("An application to reopen the record ordinarily will be denied unless the party seeking to expand the record failed to adduce the evidence sought to be added notwithstanding its own due diligence."). Therefore, the court will not consider the proposed declaration.

## II. MOTION FOR SUMMARY JUDGMENT

The court withdraws Lisowski I. On reconsideration, the court grants in part and denies in part Defendant's Motion for Summary Judgment. (Docket Entry #51.)

---

[5] In any event, the court is highly skeptical of a declaration purporting to "clarify" deposition testimony in which the declarant states that he "meant to convey" something other than his testimony.

## A.    Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact. See Fed. R. Civ. P. 56(c); D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911 (1998). The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Therefore, summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Lucente v. Int'l Bus. Mach. Corp., 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted).

In ruling on a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments . . . ." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted). As such, the non-movant "will have [his or her] allegations taken as true, and will receive the benefit of the doubt when [his or her] assertions conflict with those of the movant." Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (internal quotation marks and citation omitted). "Stated more succinctly, "[t]he evidence of the non-movant is to be believed." Lucente, 310 F.3d at 254 (citing Anderson, 477 U.S. at 255).

### B.    Factual Background

#### 1.    The June Incident

Lisowski testified at deposition that on June 9, 2003, when he was working as a tankerman aboard Barge 145, a vessel owned and operated by Reinauer, he slipped on a loose grate.[6]  (Deposition of Christopher Lisowski ("Lisowski Dep.") 133-34, 167, Zonghetti Aff. Ex. C.)  Chief Mate Mark Holzman, Lisowski's supervisor, testified that the grate was loose because the bolts securing the grate had been removed in order to perform maintenance, but had not been replaced.  (Deposition of Mark Holzman ("Holzman Dep.") 13, Zonghetti Aff. Ex. D.)

Lisowski was "pretty shaken up" by the incident and reported it immediately to Chief Mate Holzman.  (Lisowski Dep. 167.)  Holzman observed that Lisowski was scared and "white as [a] piece of paper."  (Holzman Dep. 12-13.)  Although Lisowski showed Holzman that his back had been scratched near his "hip line" (Lisowski Dep. 175), he did not tell Holzman that his back was injured.  (Holzman Dep. 45-48).  Instead, he told Holzman that he was "okay." (Lisowski Dep. 175.)  Holzman reported the incident to Timothy Bishop, the Captain of Barge 145, and made sure that the grating was fixed.  (Holzman Dep. 11.)  Lisowski did not seek medical attention, nor did he feel that he needed medical attention (id. at 176-77), and he continued to work for the remainder of his tour of duty.  (Holzman Dep. 46.)

#### 2.    The July Incident

According to Lisowski, the second incident occurred on July 3, 2003, his first day working aboard Barge 145 after having been off duty as regularly scheduled for two weeks. (Lisowski Dep. 192-93.)  Lisowski testified that between 1 a.m. and 2 a.m. on July 3, 2003, he slipped on the vessel's deck near the number 4 pump and "wrenched" his back.  (Lisowski Dep.

---

[6] Although the Complaint pleads that the first accident occurred on June 8, 2003, Lisowski testified that he later learned from reviewing documents produced in discovery that it had to have occurred on June 9, 2003. (Lisowski Dep. 154-156.)

239.) Chief Mate Holzman, who worked with Lisowski on the barge that night from 1 a.m. to about 4:30 a.m., testified that the deck was slippery because the number 3 pump and the number 4 pump had been leaking "product," some kind of oil. (Holzman Dep. 51, 55, 21-22.) Holzman testified that while he and the crew were cleaning up the leak from the number 3 pump, Lisowski reported to him that the deck near the number 4 pump was slippery. (Id. at 21, 54.) Lisowski did not, while Holzman was on the barge, tell Holzman that he had wrenched his back or otherwise been injured. (Id. at 55.)

Lisowski testified that later in the morning on July 3, 2003, between 10 a.m. and 11:15 a.m., he reported to Holzman that his back hurt. (Lisowski Dep. 193-94.) He told Holzman that he did not know how he had hurt his back, but that it could have been caused by slipping on the deck, sleeping on it wrong, or twisting a valve. (Id. at 191-92, 194.) Lisowski later told Captain Bishop that he had hurt his back either sleeping on it wrong or twisting a valve, and that he did not mention slipping. (Id. at 198.) According to Captain Bishop, there was a program aboard the vessel to address the need for better non-skid paint to prevent slipping, but the paint had not yet been replaced near the number 3 and number 4 pump, where Mr. Lisowski was working. (Deposition of Timothy Bishop ("Bishop Dep.") 11, Zonghetti Aff. Ex. G.) The personal injury report filled out by Captain Bishop on July 7, 2003, which Lisowski did not sign, states that Lisowski "had trouble getting out of bed – don't know what he did to back – maybe turning valves prior watch or small slip on deck – no recollection of incident causing injury." (Reinauer Personal Injury Report, Zonghetti Aff. Ex. F.) According to Holzman, Lisowski did not tell him about the July 3, 2003 slip until several days or even weeks later, when Holzman was discussing with him what might have caused his back pain. (Holzman Dep. 36, 50.)

### 3. Medical Treatment

After leaving Barge 145 on July 7, 2003, Lisowski went to a hospital emergency room for his back pain and was informed that he had spondylolisthesis, a condition affecting his back. (Lisowski Dep. 141-44.) While it is undisputed that Lisowski never told a doctor about the slip on June 9, 2003, it was sometime after the trip to the emergency room that Lisowski "actually realized that [he] had initially hurt" himself on June 9, 2003. (Lisowski Dep. 136-37.)

Dr. Alan Gillick first saw Lisowski on August 15, 2003. (Gillick 1st Dep. 5.) According to Dr. Gillick, Liskowski told him that he injured his back on July 3, 2003, sustaining "twisting injury to his back on a wet deck on the ship." (Id. at 69.) Dr. Gillick testified that Lisowski's x-rays and MRI showed that he had spondylolisthesis, which he testified is "essentially a slippage in the spine between two vertebrae." (Id. at 6-7.) He testified that he "suspected" that Lisowski's spondylolisthesis was "developmental in nature" and had occurred when Lisowski was an adolescent or pre-adolescent, as is common. (Id. at 8.) He testified that a previous episode in 1999, when Lisowski had to take three months off from work due to back pain, demonstrated that Lisowski's spondylolisthesis was symptomatic before his accidents on Barge 145, although he noted that it was common for patients to have episodes which would resolve on their own, allowing them to return to work. (Gillick 2nd Dep. 49.) In treating Lisowski in August 2003, Dr. Gillick recommended physical therapy, but after the therapy was unsuccessful, he performed a surgical decompression and fusion on Lisowski on December 2, 2003. (Gillick 1st Dep. 8-13.)

Lisowski never told Dr. Gillick about the June 9, 2003 incident. (Id. at 71.) It appears from the record that Dr. Gillick became aware of the June incident from a letter from plaintiff's counsel dated June 29, 2004. (Gillick 2nd Dep. 22-23.)

When asked at his first deposition whether he could state with "reasonable medical certainty" and "in his medical expertise as a surgeon" whether "either or both of the incidents cause[d] the injuries of which [Plaintiff] complained of when he came and seeked [sic] your assistance," Dr. Gillick testified, "I do believe the injury that he [Lisowski] described to me did in fact cause the symptoms that required treatment by myself," referring to the July incident. (Gillick 1st Dep. 36-37.) He also testified that the first (June) incident "could" have exacerbated the underlying spondylolisthesis, that the second (July) incident "certainly could" have aggravated it, but that "the description of the second injury is sufficient to have caused the injury." (Id. at 24-26, 89, 91.) When asked on cross-examination whether he had ever opined that both incidents caused the injury, he initially stated that he did not, but then when read portions of his letter to Plaintiff's counsel in which he had expressed that opinion, he testified that "based on those two incidents, I did formulate that opinion. However, as I explained about ten times so far, the second event is certainly perfectly adequate to explain his injury." (Id. at 91.)

At his second deposition, Dr. Gillick testified that the two incidents "could" have aggravated the spondylolisthesis, and that either of the incidents on its own "could" have aggravated it." (Gillick 2nd Dep. 22-23.) When asked in more detail about the causes of the aggravation, he testified that it was unlikely that sleeping the wrong way could cause persistent disabling symptoms of the kind experienced by Lisowski. (Id.) He testified that twisting a valve "could" have aggravated Lisowski's spondylolisthesis, depending on the size of the valve. (Id.) According to Dr. Gillick, whether twisting a valve or slipping caused the aggravation of the symptoms would depend on "the circumstances of what [Lisowski] was going through from a

16

pain standpoint specifically related to [these] incidents." (Id. at 28.) He stated that he did not know these circumstances sufficiently to be able to say what caused Lisowski's symptoms. (Id.)

Defendant's expert, Dr. Daveed Frazer, an orthopedic spine surgeon who evaluated Lisowski's back injury, found that there was no objective radiographic evidence of an injury to Lisowski's spine. He concluded that (1) there is "no objective evidence in terms of radiographic evidence, neurophysiologic testing, or physical examination that there is any substantial change in Lisowski's condition" and (2) "[t]he radiographic changes seen between 1999 and 2003 cannot be attributed to the accident but are consistent with the natural history of progression of the underlying disease." (Narrative Report of Daveed D. Frazer, M.D., Zonghetti Aff. Ex. J.)

### C.  Claims

Lisowski has sued Reinauer under the Jones Act, 46 U.S.C. § 30104, and the general maritime law of the United States for back injuries – the aggravation of his pre-existing spondylolisthesis and the new injuries – allegedly caused by Reinauer's negligence and the unseaworthiness of Barge 145. (Compl. ¶ 7.) Specifically, Lisowski claims that Reinauer should have: (1) replaced the bolts on the grate upon which he slipped; (2) warned or supervised him regarding the area of danger; (3) repaired the leaky pumps which made Barge 145's deck slippery; (4) degreased the area; and (5) applied non-skid paint to Barge 145's deck to prevent slips. (Id. ¶ 8.)

Defendant argues that Lisowski cannot establish a prima facie case for negligence under the Jones Act or unseaworthiness under the general maritime law because he is unable to establish causation. Specifically, Reinauer argues that expert medical testimony is required to establish the causal relationship between the Lisowski's alleged accidents on Barge 145 and the aggravation of his spondylolisthesis. While Plaintiff has provided expert testimony with Dr.

Gillick's deposition, Defendant claims that Dr. Gillick's testimony, which it characterizes as "speculative," is insufficient to prove this causal relationship and should be barred. (Def. Mem. Supp. Mot. Summ. J. 15-17 (Docket Entry #51).) Reinauer further argues that Lisowski cannot himself testify as to causation because he is not an expert. (Id. at 23.) In response, Plaintiff contends that "medical testimony in a Jones Act case need only be reasonably causally related. It need not even be probable." (Pl. Opp. 8.) He also asserts that his own testimony "regarding his injuries and back pain" is admissible. (Id. at 12.)

The court notes that Defendant's Motion addresses only the causation elements of Plaintiff's claims under the Jones Act and the general maritime law and does not address whether the conditions establish that Defendant was negligent or that Barge 145 was unseaworthy in the first instance. (See Def. Reply. 2 ("[D]efendant[] did not move for summary judgment on the issue of liability since said issue is one classically fact dependent and typically not the subject of summary judgment.") The court therefore addresses only the causation elements of Plaintiff's claims under the Jones Act and the general maritime law.

### 1. Jones Act

The Jones Act confers the right to bring a civil suit for a "seaman injured in the course of employment." 46 U.S.C. § 30104 (2006); see also O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 61-62 (2d Cir. 2002) (discussing legislative history and noting that the Jones Act provides "heightened legal protection [to] seamen . . . because of their exposure to the perils of the sea.") (citation and internal quotation marks omitted). The Jones Act places a duty on the owner of a vessel to provide a reasonably safe workplace. Oxley v. City of New York, 923 F.2d 22, 25 (2d Cir. 1991). In Jones Act cases, a "plaintiff is entitled to go to the jury if the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing

the injury . . . for which damages are sought." Id. (emphasis in original). Moreover, the Second

Circuit has noted that "the right of the jury to pass upon the question of fault and causation must

be most liberally viewed." Id.

In a case under the Jones Act, while a plaintiff need not introduce medical testimony that

defendant's negligence was "definitely" the cause of plaintiff's injury, and medical testimony as

to causation need not be unanimous, see Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S.

107, 108-109 (1959), the Second Circuit has noted that the jury 'is not permitted to speculate on

proximate cause in the absence of reasonably persuasive proof that the negligence was the

probable cause of the injury.'" Reynolds v. Sealift, Inc., No. 07-5519-CV, 2009 WL 424387, at

*2 (2d Cir. Feb. 20, 2009) (summary order) (quoting Fitzgerald v. A.L. Burbank & Co., 451 2d

670, 681 (2d Cir. 1971)).

The court first addresses the parties' contentions regarding who may testify as to

causation. The parties do not dispute that expert testimony is required to determine whether

Lisowski's symptoms are the result of the natural progression of his pre-existing condition or

were caused by either or both of the accidents Lisowski suffered as a result of Reinauer's alleged

negligence. Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (holding that, in Jones

Act case, expert testimony is required where "the nexus between the injury and the alleged cause

would not be obvious to the lay juror."). The parties simply dispute whether the testimony of

Lisowski's expert is sufficient to establish causation under the Jones Act, which the court

addresses below. Regarding whether Lisowski may testify as to causation, given that the cause

of the aggravation of his spondylolisthesis is a complex medical matter beyond his knowledge,

he may not testify at trial as to causation. See Henry v. A/S Ocean, 512 F.2d 401, 408 (2d Cir.

1975) (noting that the district judge properly excluded testimony by the plaintiff "concerning the

cause of his conditions" because "lay testimony to the medical fact beyond the witness's knowledge would be entitled to no weight."). Lisowski may, however, testify on elements of his claims other than causation, such as what happened to him on the ship and the symptoms of his condition, including his back pain.

Turning now to the evidence on causation, the court concludes on reconsideration that Dr. Gillick's deposition testimony is sufficient for Plaintiff's Jones Act claim to survive summary judgment only with respect to the July 3, 2003 incident – the second incident. Dr. Gillick testified that, to a reasonable degree of medical certainty, "I do believe that the injury that [Lisowski] described to me did in fact cause the symptoms that required treatment . . . ." (Gillick 1st Dep. 36-37.) He similarly testified that the "second injury" – referring to the July 2003 incident – "was perfectly adequate" and "sufficient" to have caused the injury. (Id. at 91, 90.) While the deposition testimony also contains some speculative testimony that the incident "could" have caused the aggravation of Lisowski's spondylolisthesis, which, if considered in isolation, would be insufficient to defeat summary judgment, the court concludes that Dr. Gillick's deposition testimony that the injury "did in fact cause the symptoms that required treatment" satisfies the causation requirements of the Jones Act. See Oxley, 923 F.2d at 25 (holding that a "plaintiff is entitled to go to the jury if the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought.") (emphasis in original).

Indeed, at the summary judgment stage, the court "is not to weigh the evidence" and must "eschew credibility assessments," Weyant, 101 F.3d at 854; moreover, "[t]he evidence of the non-movant is to be believed." Lucente, 310 F.3d at 254 (citation omitted). Under this standard, a reasonable finder of fact could conclude that Dr. Gillick's testimony provides "reasonably

persuasive proof," Reynolds, 2009 WL 42387 at *2, that the July 2003 incident "played any part, even the slightest" in aggravating Plaintiff's spondylolisthesis and causing the symptoms for which he required surgery, Oxley, 923 F.2d at 25.

Turning to Plaintiff's contention that the incident on June 9, 2003 – the first incident – caused the aggravation of the spondylolisthesis, the court concludes that this claim cannot survive summary judgment. When asked whether "either or both" of the incidents caused the Lisowski's symptoms requiring treatment, Dr. Gillick responded by saying that the injury "described to me" was the cause, referring to the second incident; he also testified that "the only connection that I have made and continue to make is . . . the injury that I'm aware of, and that was the injury on the deck in July. And it's on that that I base my causal connection." (Gillick 1st Dep. 36-37.) He testified at his second deposition that the first incident "could" have aggravated Lisowski's spondylolisthesis (Gillick 2nd Dep. 22-23), but also testified that he "did not" conclude that both incidents caused the injury (Gillick 1st Dep. 90). After being confronted with his letter, however, he stated that "based on those two incidents, I did formulate that opinion. However, as I explained about ten times so far, the second event is certainly perfectly adequate to explain his injury." (Gillick 1st Dep. 91.)

Plaintiff's contention that medical testimony in a Jones Act case as to the cause of the injury "need only be reasonably causally related" and "need not even be probable" is incorrect. As the Second Circuit has noted, the jury is "not permitted to speculate on proximate cause in the absence of reasonably persuasive proof that the negligence was the probable cause of the injury.'" Reynolds, 2009 WL 424387, at *2 (quoting Fitzgerald v. A.L. Burbank & Co., 451 2d 670, 681 (2d Cir. 1971)). While the Jones Act requires only that the negligence of the employer "played any part, even the slightest, in producing the injury," Oxley, 923 F.2d at 25, a plaintiff

must still offer "reasonably persuasive proof."[7] Reynolds, 2009 WL 424397 at *2. Such proof is lacking with respect to the first incident, given the speculative nature of Dr. Gillick's testimony regarding that incident. See Boucher v. United States Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (noting that "expert testimony should be excluded if it is speculative or conjectural"). Therefore, while Plaintiff's Complaint simply alleges that both the June and July incidents were the cause of the aggravation of Plaintiff's spondylolisthesis (Compl. ¶ 7), summary judgment is granted to Defendant with respect to the first incident because Plaintiff has provided only speculative expert testimony in support of his claim.

In sum, the court grants summary judgment to Defendant regarding the claim that the June 2003 incident aggravated Plaintiff's condition, but denies summary judgment with respect to the July 2003 incident. On Defendant's request to exclude Dr. Gillick's testimony as "speculative," the court concludes that Dr. Gillick may testify at trial only with respect to the July 2003 incident.

### 2. General Maritime Law

The Second Circuit has noted that "liability based upon unseaworthiness is wholly distinct from liability based upon negligence." Oxley, 923 F.2d at 24 (citation omitted). Under the principles of seaworthiness, an owner has an absolute duty to furnish a ship, crew, and appurtenances reasonably fit for their intended service. Id. "An owner's failure to provide a ship, crew, and appurtenances reasonably fit for their intended service results in 'a species of liability without fault,' . . . and such liability 'does not depend either on negligence . . . or on notice.'" Id. at 25 (internal citations omitted). A ship is considered to be unseaworthy when it is

---

[7] Put slightly differently by the Sixth Circuit, "[w]hile a [Jones Act] employers' negligence need only play the slightest role in causing the employee's injury, evidence of that causation must be illustrated by more than speculation or mere possibility." Stevenson v. CSX Transp., No. 95-3361, 1996 WL 397420, at *3 (6th Cir. July 15, 1996).

"insufficiently or defectively equipped." Id. (citation omitted). Therefore, to prevail on a claim of unseaworthiness under the general maritime law, a plaintiff must prove that a vessel was deficiently or insufficiently equipped and that his injuries resulted from the unseaworthy condition of the vessel. See id. at 26.

The Second Circuit has not established what level of causation is required for an unseaworthiness claim. In Milos v. Sea-Land Services, Inc., 478 F. Supp. 1019, 1023 (1979), a judge in the Southern District of New York ruled that the causation requirement was the same standard that applies under the Jones Act. In Saleh v. United States, 849 F. Supp. 886, 895 (1994), another judge in the Southern District required the plaintiff to demonstrate that "unseaworthiness played a substantial part in bringing about or actually causing the injury" and that "the injury was either a direct result or a reasonably probable consequence of the unseaworthiness," and described Milos as "out of step with other statements of law on this subject." Saleh, 849 F. Supp. at 895 n.8. Other district courts have followed Saleh. See Sadler v. Moran Towing Corp., 204 F. Supp. 2d 695, 697 & n.11 (S.D.N.Y. 2002) (noting that "[t]he standard of causation for unseaworthiness is more strict than for a Jones Act claim of negligence" and citing Saleh among other authorities); Nasser v. CSX Lines, LLC, 191 F. Supp. 2d 307, 315 (E.D.N.Y. 2002) (following Saleh); accord Brown v. OMI Corp., 863 F. Supp. 169, 170 (S.D.N.Y. 1994); see also Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 6-25 (4th ed. 2008 & 2009 Update) (citing Saleh and noting that "[c]ausation in unseaworthiness requires a showing of 'proximate cause in the traditional sense.' Proximate cause means that (1) the unseaworthiness played a substantial part in bringing about or actually causing the injury and that (2) the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.") (footnotes omitted).)

23

Defendant makes no argument regarding whether the loose grate and/or oil leakage onto the deck of Barge 145 rendered the vessel unseaworthy; it contends only that Plaintiff cannot establish causation under Saleh. (Def. Mem. Supp. Summ. J. 24-25; Def. Reply 2, 9-10.) As noted above, because Defendant has not moved for summary judgment on any elements of Plaintiff's claims other than causation, the court does not address unseaworthiness here.

Regarding causation, the court is persuaded to follow Saleh and the other district courts in this circuit that have required the more stringent "substantial factor" causation requirement for an unseaworthiness claim. Turning to Plaintiff's claims, the court notes that because Lisowski cannot satisfy even the weak causation requirement under the Jones Act with respect to the June 2003 incident, summary judgment is granted to Defendant with respect to that incident. As for the July 2003 incident, the court concludes that Dr. Gillick's deposition testimony is sufficient to survive summary judgment on the issue of causation under the standard articulated in Saleh. A reasonable finder of fact could conclude that Dr. Gillick's testimony that the second injury "did in fact cause the symptoms that required treatment by myself" meets the "substantial factor" standard for causation. While Defendant notes that Dr. Gillick testified that he did not know the circumstances sufficiently to say what caused plaintiff's symptoms (Gillick 1st Dep. 28), the court notes that Dr. Gillick testified several times in his deposition testimony that the July incident caused the aggravation of Plaintiff's condition, which is sufficient to raise an issue of material fact and defeat summary judgment. Defendant is free to address Dr. Gillick's credibility and inconsistencies in his testimony on cross-examination at trial.

In sum, summary judgment on the unseaworthiness claim is granted with respect to the June 2003 incident and denied with respect to the July 2003 incident.

## III.    CONCLUSION

For the reasons above, Plaintiff's Motion for Reconsideration is GRANTED only to the extent that the court has reconsidered previously uncited excerpts from Dr. Gillick's deposition testimony. On reconsideration, Defendant's Motion for Summary Judgment is GRANTED with respect to the June 2003 incident and DENIED with respect to the July 2003 incident. The judgment dated March 27, 2008 is rescinded.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      March 2 0, 2009

NICHOLAS G. GARAUFIS
United States District Judge